UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

FILED

MAY 09 2012



\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| LONNI FLECK and CORY FLECK, | CIV. 10-5072 |
| Plaintiffs, | |
| v. | ORDER |
| NEUROSURGICAL & SPINAL SURGERY ASSOCIATES, P.C., | |
| Defendant. | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Pending are motions to quash a subpoena duces tecum and for a protective order by four non-parties.[1]

## BACKGROUND

### FLECKS

Lonni and Cory Fleck ("Flecks") sued Neurosurgical & Spinal Surgery Associates, P.C. ("NSSA") alleging medical negligence.[2] Flecks claim NSSA negligently performed spinal surgery on Lonni Fleck. They allege Dr. Marius Maxwell, a shareholder of NSSA, was the surgeon. Dr. Maxwell is not a named defendant.

Flecks served a subpoena duces tecum on non-parties Black Hills Surgical Hospital, LLP, (BHSH), Black Hills Surgical Physicians, LLC, and Black Hills Surgical, LLP. These three non-parties are sometimes collectively referred to as "Black Hills non-parties" in this opinion. The

---

[1]Docs. 34 and 39.

[2]Doc. 1.

disputed item in the subpoena is:

> Documentation showing the ownership interest of Black Hills Surgical Hospital, LLP, Black Hills Surgical Physicians, LLC and Black Hills Surgical, LLC as to the following individuals on September 5,2008:
>
> | | |
> |---|---|
> | Stuart Rice, MD | Tim Watt, MD |
> | Larry Teuber, MD | Marius Maxwell, MD |
>
> The above individuals may or may not be all of the owners of Black Hills Surgical, Hospital, LLP, Black Hills Surgical Physicians, LLC and Black Hills Surgical, LLC on September 5, 2008, and Plaintiffs request that the correct individuals and all owners be identified.[3]

### THE "BLACK HILLS NON-PARTIES"

The Black Hills non-parties perceive the subpoena as "demands for financial information" and as "apparently seeking all documentation related to all the ownership interests in these corporate entities."[4] They argue the financial information of these non-parties is not relevant, and that even the financial ownership interest of defendant Maxwell is not relevant.[5] Further, they argue the same "information can be obtained through normal discovery from Dr. Maxwell or NSSA."[6]

### NON-PARTY MAXWELL

Non-party Dr. Marius Maxwell, in a document entitled "Motion For A Protective Order," moved for an order quashing item one of the subpoena or in the alternative for a protective order.[7]

---

[3]Doc. 34-1.

[4]Doc. 35, pp. 2-3 (underlining in original, quotation marks omitted).

[5]*Id.* p. 3.

[6]Doc. 35, p. 5 (underlining in original). It is observed that Dr. Maxwell is also a non-party.

[7]Doc. 39.

2

Maxwell asserts he has standing to make the motion to quash because he is "a party who has a personal right or privilege regarding the production sought."[8] Maxwell asserts disclosure of the subpoenaed information allows access to his financial information which is not relevant to the issues in the lawsuit.[9] "The evidence concerning Dr. Maxwell's interest in BHSH is not more relevant to a suit against NSSA than evidence that Dr. Maxwell owns stock in Microsoft."[10]

### FLECKS' RESPONSE

Flecks respond that "among the admission documents Lonni was asked to sign was a Disclosure Form that included the following statement:

> Neurosurgical & Spine Surgery Associates, P.C., The Spine Center at Rapid City, Neurology Associates and/or it's [sic] physician's [sic], Marius Maxwell, Stuart G. Rice, Edward L. Seljeskog, Larry L. Teuber and Tim J. Watt have either a partial or entire ownership interest in Promotion Rehabilitation Center (PRC), Electrodiagnostic Services (EDS), The Black Hills Surgery Center (BHSC) and the Black Hills Imaging Center (BHIC)."[11]

Flecks observe that the subpoena seeks to learn "the degree of 'ownership interest' each of The Spine Center physicians have in BHSC and its related entities."[12] Flecks argue:

---

[8]Doc. 40, f.n. 1

[9]*Id.* p. 2.

[10]*Id.*

[11]Doc. 43, pp. 2-3. The reference to "admission documents" is understood to refer to admission to the hospital as distinguished from discovery documents in this lawsuit.

In f.n. 2 Flecks advise "'the reference to all owners' is a drafting error. The request is intended only to seek information regarding the ownership interest of the five physicians who were named in the 'Disclosure of Physician Ownership'. . . ." (punctuation altered).

[12]*Id.* p. 3.

3

> Contrary to the characterization given the request by The Spine Center and BHSC, it does not require personal financial information. To the contrary, the information is neither personal nor financial. The fact of ownership is disclosed in The Spine Center's and BHSC's Disclosure Forms. The Flecks simply seek the degree of that ownership.[13]

The Flecks assert "the degree of ownership is evidence of NSSA's ability to control, manage, and direct the staff and functions of BHSC as to the care and treatment of Lonni before, during, and after her surgery."[14] To advance this argument Flecks observe further:

> Dr. Maxwell testified that he relies, in part, on the information to Lonni through the discharge records that are BHSC forms. His ownership interest in BHSC is clearly relevant to establish his ability to control and direct its staff and the content of the information in its forms and its policies and procedures. Furthermore, the identity of other owners and their degree of ownership is relevant because those with significant ownership interest may have knowledge of the policies and procedures which Dr. Maxwell claims to rely on. This is a medical entity, and as such, those who have an ownership interest may be uniquely positioned to provide information relevant to the assertions made by Dr. Maxwell.[15]

Flecks bolster their relevancy argument by asserting the subpoena does not create an undue burden, does not ask for privileged or otherwise protected information, and does not ask for trade secret or other confidential information.[16]

**THE BLACK HILLS NON-PARTIES' REPLY.**

The Black Hills non-parties reply the information can easily be obtained without burdening them and also assert the subpoena seeks confidential information.[17] They argue that knowledge

---

[13] *Id.* (internal quotation marks and citations to record omitted).

[14] *Id.* p. 5.

[15] *Id.* pp. 5-6 (internal citation to record omitted).

[16] *Id.* pp. 6-9.

[17] Doc. 46, p. 1.

about procedures and policies is not relevant because the procedures and policies have already been disclosed to Flecks under that part of the subpoena that was not challenged, and they will designate a representative for a Rule 30(b)(6) deposition to provide more information.[18] "Few legal rules are better established than the principle that a writing speaks for itself."[19] They support their argument by rhetorically asking:

> Further, if these other shareholders of NSSA can neither be held responsible for the acts of NSSA nor Dr. Maxwell, and have no information about the discharge policies of Black Hills Surgical Hospital that can rise above the written version of those policies themselves, how can their ownership interests in Black Hills Surgical Hospital possibly be relevant to the claim actually at issue: whether NSSA, through Dr. Maxwell, was negligent providing care to Plaintiff Lonni Fleck?
>
> Indeed, the extent of these non-party physicians' ownership interest in a non-party hospital is so distant from the issues in this litigation that the term irrelevant becomes nearly an understatement.[20]

Regarding the relevance of Dr. Maxwell's ownership interest, the Black Hills non-parties argue "stock ownership alone, even a majority interest, is insufficient to show domination or control over a corporation."[21] They cite *Yellow Robe* to illustrate that the subpoenaed information is entitled to protection under Rule 45(c)(3)(A).[22]

---

[18] *Id.* p. 2.

[19] *Id.* (internal quotation marks and citation omitted).

[20] *Id.*, p. 3.

[21] *Id.* p. 4.

[22] *Id.* pp. 5-6, citing *Yellow Robe v. Allender*, 2010 WL 1780266 *7 (D.S.D.).

# DECISION

## STANDARD

The Eighth Circuit Court of Appeals has described the standard for reviewing a decision to quash a subpoena and in doing so has identified the standard for a trial court to use when deciding a motion to quash a subpoena:

> We review orders quashing a subpoena for abuse of discretion. On timely motion, a district court shall quash or modify a subpoena if the subpoena fails to allow reasonable time for compliance, requires a witness who is not a party to travel more than 100 miles, requires disclosure of privileged or protected matter, or subjects a person to undue burden. A subpoena must also seek relevant information.("Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party..."). We review relevancy determinations for abuse of discretion.[23]

The scope of discovery standards are generally the same everywhere, though variations in description are common. Judge Thalken describes it nicely:

> All discovery requests are a burden on the party who must respond thereto. Unless the task of producing or answering is unusual, undue or extraordinary, the general rule requires the entity answering or producing the documents to bear that burden. Parties may discover any relevant, unprivileged information that is admissible at trial or is reasonably calculated to lead to admissible evidence. Relevancy is to be broadly construed for discovery issues and is not limited to the precise issues set out in the pleadings. Relevancy, for purposes of discovery, has been defined by the United States Supreme Court as encompassing "any matter that could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Discovery requests should be considered relevant if there is any possibility that the information sought is relevant to any issue in the case and should ordinarily be allowed, unless it is clear that the information sought can have no possible bearing on the subject matter of the action. Typically, the burden is on the party resisting discovery to explain why discovery should be limited given that the Federal Rules allow for broad discovery. However, the proponent of discovery must make a threshold showing of relevance before production of information, which does not reasonably bear on the issues in the case, is required. Mere speculation that

---

[23]*Pointer v. DART,* 417 F.3d 819, 821 (8th Cir. 2005).

information might be useful will not suffice; litigants seeking to compel discovery must describe with a reasonable degree of specificity, the information they hope to obtain and its importance to their case. The court may issue a protective order to prevent discovery where "justice requires to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense." The party resisting facially overbroad or unduly burdensome discovery need not provide specific, detailed support. A court requires no further response when inadequate guidance exists to determine the proper scope of a request for discovery. The District Court enjoys considerable discretion over discovery matters and may limit the scope of discovery, if it has a good reason to do so.[24]

## ANALYSIS

NSSA is the only named defendant. NSSA does not have any ownership interest in any of the three Black Hills non-parties.[25] It is undisputed that each of the persons named in the subpoena has an ownership interest in the Black Hills Surgical Hospital. There is nothing in the record to disclose their ownership interests in the other two Black Hills non-parties.

Flecks want to know how much of each of the Black Hills non-parties is owned by each person named in the subpoena. None of the persons named in the subpoena is a named defendant. Maxwell is the involved surgeon. He is alleged to be a shareholder in the named defendant NSSA. At the risk of being redundant, Maxwell, too, is a non-party.

Flecks argue they need to know how much these persons own so that Flecks can determine how much *NSSA* can "control, manage, and direct the staff and functions of BHSC as to the care and treatment of Lonni before, during, and after her surgery." Flecks also argue Dr. Maxwell testified that he relies on the information on BHSC forms so that *his* ownership interest in BHSC is relevant

---

[24]*Thompson v. Regional West Medical Center*, 2007 WL 3232603, *3 (D. Neb.) (internal citations omitted, some quotation marks omitted).

[25]Doc. 41, ¶ 2.

to establish *his* ability to control and direct its staff and the content of the information in its forms and its policies and procedures.

The duty owed by a physician who is a specialist to his patient is:

In performing professional services for a patient, a specialist in a particular field of medicine has the duty to possess that degree of knowledge and skill ordinarily possessed by physicians of good standing engaged in the same field of specialization in the United States.

A specialist also has the duty to use that care and skill ordinarily exercised under similar circumstances by physicians in good standing engaged in the same field of specialization in the United States and to be diligent in an effort to accomplish the purpose for which the physician is employed.

A failure to perform any such duty is negligence.[26]

The burden is on Flecks to make a threshold showing of relevance. Flecks have not shown that the fact or degree of ownership tends to prove NSSA or its agent failed to use that care and skill ordinarily exercised under similar circumstances by physicians in good standing engaged in the same field of specialization. The information sought can have no possible bearing on the subject matter of the lawsuit.

It is ORDERED:

1. That the motions to quash the subpoena (Doc. 34 & 39) are GRANTED to the extent that it requires the subpoenaed parties to produce "documentation showing the ownership interest of Black Hills Surgical Hospital, LLP, Black Hills Surgical Physicians, LLC and Black Hills Surgical, LLC as to the following individuals on September 5, 2008: Stuart Rice, MD; Tim Watt, MD; Larry Teuber, MD; Marius Maxwell, MD."

2. That the alternative motions for protective order are DENIED AS MOOT (Docs. 34 & 39).

---

[26]South Dakota Pattern Jury Instruction 20-70-50.

Dated this 9 day of May, 2012.

BY THE COURT:

_____
John E. Simko
United States Magistrate Judge